# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNITED PARCEL SERVICE, INC., an Ohio corporation; MARK SORIANO, an individual; and DOES 1 through 25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MARC LOPEZ, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Central Justice Center
700 Civic Center Drive West, Santa Ana 92701

CASE NUMBER: *(Número del Caso):*
30-2021-01215072-CU-WT-CJC

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Mills Sadat Dowlat LLP, 333 South Hope Street, 40th Floor, Los Angeles, CA 90071; (213) 628-3856

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).*)
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Exhibit A Page 02

MILLS SADAT DOWLAT LLP
Brigitte Mills (SBN 281098)
Arash Sadat (SBN 279282)
Camron Dowlatshahi (SBN 308618)
333 South Hope Street, 40th Floor
Los Angeles, CA 90071
Tel.:   (213) 628-3856
Email: brie@ msdlawllp.com
Email: arash@msdlawllp.com
Email: camron@msdlawllp.com

Attorneys for Plaintiff
Marc Lopez

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

| | |
|---|---|
| MARC LOPEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC., an Ohio corporation; MARK SORIANO, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 30-2021-01215072-CU-WT-CJC<br>Assigned To: Hon. Theodore R. Howard<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**<br><br>(1) **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br><br>(2) **RETALIATION (LAB. CODE, § 1102.5)**<br><br>(3) **FAILURE TO PROVIDE MEAL AND REST PERIODS (LAB. CODE, §§ 226.7, 512, IWC WAGE ORDERS)**<br><br>(4) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>(5) **INTENTIONAL MISREPRESENTATION**<br><br>(6) **NEGLIGENT MISREPRESENTAITON**<br><br>Complaint Filed: August 11, 2021<br>Trial Date: None Set<br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Marc Lopez, by and through his undersigned counsel, brings this action against defendants United Parcel Service, Inc., Mark Soriano, and Does 1 through 25, inclusive, and alleges as follows:

## THE PARTIES

1. Plaintiff Marc Lopez ("Mr. Lopez" or "Plaintiff") is an individual residing in Orange County, California.

2. Defendant United Parcel Service, Inc. ("UPS") is an Ohio corporation with its principal place of business in Georgia.

3. Defendant Mark Soriano is an individual residing in the Orange County, California.

4. Plaintiff is unaware of the true names and capacities of the defendants sued as Does 1 through 25, inclusive, and therefore sues these defendants by fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages were proximately caused by said defendants' conduct.

## VENUE AND JURISDICTION

5. The wrongful conduct alleged against the Defendant occurred in the County of Orange County, California. At all times relevant hereto, the conduct at issue was part of a continuous and ongoing pattern of behavior.

6. This Court is the proper forum to adjudicate this action because the wrongful acts that are the subject of this action occurred here and injury to person occurred in its jurisdictional area.

## GENERAL ALLEGATIONS

7. Mr. Lopez was employed as a mechanic at the UPS Anaheim Facility from July 2015 through July 3, 2020. Mr. Lopez was an excellent and dependable employee. Over the five years Mr. Lopez worked for UPS, he never received a write-up for any performance-related issues. He was an asset to the Anaheim hub and was commonly thought of by his coworkers and supervisor alike as the "go-to guy" for his expertise.

### A. Mr. Lopez Takes on the Role of Shop Steward and Advocates for Clean and Safe Working Conditions

8. In or around February 2020, Mr. Lopez took on the role of shop steward. Unfortunately for Mr. Lopez, taking on that position ultimately put a target on his back.

9. In his role as shop steward, Mr. Lopez was a vocal advocate for the health and safety of his coworkers. Over the course of several months, Mr. Lopez reported several safety violations he witnessed within the shop. For example, despite representations made by UPS that they were taking enhanced safety measures as a result of the COVID-19 pandemic, including "enhanced cleaning of all [the] facilities," there was little to no effort made to keep the Anaheim facility clean. As just one example, the toilet seat in the facility's bathroom had feces and urine on it for over a week. Mr. Lopez complained about the state of the restroom, yet nothing was done. He was ultimately forced to clean the restroom himself.

10. Mr. Lopez also reported a long-standing issue with the ventilation system for removing harmful exhaust fumes from the garage. The ventilation system had not been working properly for over 10 years, and Mr. Lopez attempted to finally resolve the dangerous health hazard by reporting the issue to his supervisor. Mr. Lopez is informed and believes that the ventilation system remains broken and that current UPS employees continue to be exposed to the harmful exhaust fumes.

11. Mr. Lopez was outspoken about several other workplace safety violations including the failure to clean up liquid spills that caused a slipping hazard, broken tools that were not replaced and posed an injury risk, and broken ladders that posed a major fall risk. Mr. Lopez's concern regarding these safety hazards was based on experience. For example, Mr. Lopez knew very well the risk of a faulty ladder because he had witnessed a fellow employee fall from broken ladder and snap his femur in half.

12. While his advocacy was welcomed and appreciated by his coworkers, management clearly felt differently.

//
//

### B. Mr. Lopez Is Targeted for Termination

13. As a result of Mr. Lopez's opposition to unsafe practices within the Anaheim facility, UPS management devised a plan to terminate him. On or around July 3, 2020, Mr. Lopez and three of his fellow employees were terminated for purportedly falsifying their timesheets.

14. However, the conduct for which Mr. Lopez and his coworkers were terminated was done at the direction of their supervisor, defendant Mark Soriano ("Mr. Soriano"). Specifically, Mr. Soriano repeatedly instructed employees to falsify timesheets if they were unable to take their meal or rest breaks at the required time. Mr. Soriano represented that this was company policy.

15. For example, if Mr. Lopez worked over four hours without taking a rest break, Mr. Soriano told Mr. Lopez (and his coworkers) to record the rest break anyway and add the missed rest break to his lunch period. Accordingly, Mr. Lopez would often lump together his legally mandated breaks together and take one extended break. It was for precisely this practice that Mr. Lopez was ultimately terminated.

16. Tellingly, each of Mr. Lopez's three co-workers, who were accused of the exact same conduct, were rehired within less than a week. Mr. Lopez alone was not rehired. The only credible explanation for why Mr. Lopez was treated differently from his coworkers is that management specifically targeted Mr. Lopez for termination because of his reports of health and safety violations. The purported timesheet falsification—again, done at the specific direction of Mr. Soriano—provided a convenient pretext for terminating Mr. Lopez whose advocacy had apparently become bothersome to UPS management.

17. Mr. Lopez is informed and believes that Mr. Soriano is continuing to instruct UPS employees to falsify their timesheets. Upon information and belief, on or around April 12, 2021, Mr. Soriano held a meeting with the entire Anaheim crew and again instructed them to modify their timesheets if they were unable to take their breaks at the required time.

18. Apparently, UPS has no problem with this practice as long as the employees are quiet about their right to a clean and safe working environment.

//
//

## FIRST CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

(Against UPS and Does 1 through 25)

19. Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

20. Plaintiff was employed by UPS beginning in July 2015.

21. UPS discharged Plaintiff on or about July 3, 2020.

22. Plaintiff's complaints to UPS's management regarding unsafe and unhealthy working conditions were substantial motivating reasons for Plaintiff's discharge.

23. As a result of UPS's conduct, Plaintiff has sustained, and continues to sustain, damages, in the form of lost wages and other employment benefits, and emotional and physical distress in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Retaliation (Lab. Code, § 1102.5)

(Against UPS and Does 1 through 25)

24. Plaintiff re-alleges incorporates all preceding paragraphs of this Complaint as though set forth fully herein.

25. At all times mentioned herein, UPS employed five or more persons. Labor Code section 1102.5 requires UPS to refrain from retaliating against any employee as a result of the employee's opposition to practices forbidden by state or federal statute, or practices that violate or do not comply with a local, state, or federal rule or regulation pursuant to Labor Code section 1102.5, subdivision (c).

26. At all times relevant to this Complaint, Plaintiff was an employee of UPS.

27. Plaintiff complained to UPS and its agents about unsafe working conditions.

28. Plaintiff had reasonable cause to believe the conditions violated federal or state statutes and regulations, including Cal/OSHA regulations.

29. Plaintiff's reporting of UPS's unlawful conduct was a substantial factor in Plaintiff's termination, in violation of Labor Code section 1102.5.

5

30. As a result of UPS's conduct, Plaintiff has sustained, and continues to sustain, damages, in the form of lost wages and other employment benefits, and emotional and physical distress in an amount to be proven at trial.

31. UPS acted for the purpose of causing Plaintiff to suffer financial loss and severe emotional distress and is guilty of oppression and malice, justifying an award of punitive damages.

32. As a further legal result of the above-described conduct of UPS, Plaintiff has and will continue to incur attorneys' fees and costs in an amount according to proof.

## THIRD CAUSE OF ACTION

**Failure to Provide Meal and Rest Periods (Lab. Code, §§ 226.7, 512, IWC Wage Orders)**

(Against UPS and Does 1 through 25)

33. Plaintiff re-alleges incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

34. At all relevant times, UPS was aware of and was under a duty to comply with California Labor Code sections 226.7 and 512 and applicable sections of IWC Wage Orders.

35. California Labor Code section 512 prohibits an employer from employing an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, or for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes.

36. Section 11 of Wage Order No. 4 provides (and at all times relevant hereto provided) in relevant part that:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. If an employer fails to provide an employee a meal period in accordance

6

with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

37. Section 12 of Wage Order No. 4 provides (and at all times relevant hereto provided) in relevant part that:

Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages. If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

38. Labor Code section 226.7 prohibits any employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or meal period shall pay that employee one additional hour of pay at the employee's regular rate of compensation for each workday that the employer does not provide a compliant meal or rest period.

39. UPS knowingly failed to provide Plaintiff with meal and rest periods as required by law. UPS has also failed to provide Plaintiff with any payment of meal and rest premiums.

40. Plaintiff has therefore been damaged and is entitled to payment of the meal and rest period premiums as provided by law.

## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

(Against UPS and Does 1 through 25)

41. Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

42. UPS's conduct in terminating Plaintiff was outrageous. Plaintiff's direct supervisor, Mark Soriano, specifically instructed Plaintiff to falsify his timesheets, and Plaintiff

7

was subsequently terminated for doing so. Moreover, Plaintiff was specifically targeted for termination for his complaints about unsafe working conditions. Three other employees accused of the exact same behavior were rehired within a week while Plaintiff alone was not rehired.

43. UPS intended to cause Plaintiff emotional distress or, at a minimum, acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

44. Plaintiff suffered severe emotional distress as a result of UPS's conduct.

45. UPS acted for the purpose of causing plaintiff to suffer severe emotional distress and is guilty of oppression and malice, justifying an award of punitive damages.

## FIFTH CAUSE OF ACTION

### Intentional Misrepresentation

(Against Mark Soriano and UPS)

46. Plaintiff re-alleges and incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

47. On multiple occasions, Mr. Soriano, acting on behalf of UPS, represented to Mr. Lopez that it was the company's policy that employees alter their timesheets to reflect that they took their statutorily mandated meal and rest breaks at the proper time when they in fact did not. When he made this representations, Mr. Soriano knew that it was not true that this practice was in keeping with company policy.

48. Specifically, Mr. Soriano told Mr. Lopez and his fellow employees on multiple occasions during Prework Communications Meetings ("PCMs") to alter their timesheets to feign compliance with the law. These meetings were routinely held at the Anaheim facility the start of Mr. Lopez' shift from approximately 7:00 p.m. to 7:30 p.m.

49. Mr. Soriano explained to Mr. Lopez that this policy was necessary to ensure that the company did not lose money as a result of a broken-down truck or trailer. If, for example, a truck or trailer is broken out of service, the priority is to get it fixed as quickly as possible, regardless of whether it interrupts an employee's break or prevents an employee from taking their break at the required time.

//

50. On or about June 26, 2020, at around 8:10 p.m., Mr. Soriano sent Mr. Lopez on a road call to fix a truck that had broken down. Mr. Lopez informed Mr. Soriano in-person at the Anaheim facility that going on the road call would likely result in him missing his break. Mr. Soriano told Mr. Lopez "not to worry about it" and that he could take his break later. Mr. Lopez understood this to mean that, in line with the instructions Mr. Soriano had given Mr. Lopez on numerous occasions, if he was unable to take his break at the required time, that he should add this break onto his lunch hour. Mr. Soriano intended that Mr. Lopez rely on his representations that he could and should alter his timesheets to appear to comply with the statutory requirements.

51. Mr. Lopez did miss his break as a result of the road call on June 26, 2020. In reasonable reliance on Mr. Soriano's instructions, Mr. Lopez recorded his break even though he did not take it. He added the time to his lunch hour, again, as he had been instructed to do by Mr. Soriano.

52. Mr. Lopez was later terminated as a result of altering his timesheet on June 26, 2020. Mr. Lopez's reliance on Mr. Soriano's representations that altering his timesheets in this manner was in keeping with company policy was a substantial factor in Mr. Lopez's termination.

53. The conduct of Soriano and UPS constitutes fraud, justifying an award of punitive damages.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

(Against Mark Soriano and UPS)

54. Plaintiff re-alleges and incorporates all preceding paragraphs of this complaint as though fully set forth herein.

55. Mr. Soriano, acting on behalf of UPS, represented to Mr. Lopez that it was company policy to modify timesheets to feign compliance with statutory meal and rest break requirements.

56. Mr. Soriano's representations that this practice of altering time sheets reflected company policy was not true. Although Mr. Soriano may have honestly believed these representations to be true, he had no reasonable grounds to believe that they were true. Indeed,

9

these representations could not have been true as Mr. Lopez was ultimately terminated for following this practice.

57. Mr. Soriano intended that Mr. Lopez rely on these representations and Mr. Lopez did reasonably rely on the representations.

58. Mr. Lopez was harmed by his reliance on Mr. Soriano's representations and his reliance on such representations was a substantial factor in causing his harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For general damages according to proof;

B. For special damages according to proof;

C. For amounts provided for in Labor Code section 226.7;

D. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct on appropriate legal causes of action;

E. For prejudgment interest;

F. For costs of suit, including attorneys' fees and expert witness fees; and

G. For such other relief as the Court deems just and proper.

Dated: September 8, 2021            MILLS SADAT DOWLAT LLP

By: _____

Brigitte Mills

Attorneys for Plaintiff
Marc Lopez